# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ALISON DREITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 4:18CV1565 JCH |
| | ) |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment, filed June 11, 2021.  (ECF No. 75).  The motion is fully briefed and ready for disposition.

## BACKGROUND

On September 15, 2017, the Circuit Court of the City of St. Louis issued its findings and verdict of not guilty in the murder trial of former police officer Jason Stockley.  (Defendant City of St. Louis and Scott Boyher's Uncontroverted Statement of Material Facts ("Defendants' Facts"), ¶ 1; Plaintiff's Second Amended Complaint ("SAC"), att. Exh. A).  Shortly after the verdict was released, protests began in downtown St. Louis.  (Defendants' Facts, ¶ 2).  The protests that morning and afternoon stayed around the downtown area, moving to the area near the intersection of Clark and Tucker Streets around noon.  (*Id.*, ¶ 3).  The St. Louis Police Department ("SLPD") initially staged several squads of its Civil Disobedience Teams ("CDT") at the St. Louis Police Academy, located on Tucker just south of Clark Street.  (*Id.*, ¶ 4).  As the protests were focusing mostly on areas in downtown St. Louis, Lt. Timothy Sachs and Lt. Col. Gerald Leyshock wanted to move the CDT units away, in hopes that it would de-escalate the

situation. (*Id.*, ¶ 6). SLPD therefore brought buses to the Academy area, for the purpose of taking the officers away from this location. (*Id.*, ¶ 5).

Once CDT teams loaded the buses, protestors began to surround the buses in an effort to prevent them from leaving. (Defendants' Facts, ¶ 7). Sgt. Brian Rossomanno testified that before all the officers were on the buses, protestors "surrounded both buses, and both buses were unable to move." (Defendants' Exh. A, P. 6). Furthermore, Plaintiff acknowledges that a few protestors threw what appeared to be empty water bottles at the buses. (Defendants' Facts, ¶ 9 and Plaintiff's Response thereto). While Plaintiff claims the bottles bounced harmlessly off the buses, Defendants maintain at least one item was thrown hard enough to break a window on one of the buses. (*Id.*, ¶¶ 9, 10 and Plaintiff's Responses thereto).

The Bicycle Response Team ("BRT") was called in to clear a lane for the buses to leave. (Defendants' Facts, ¶ 11). Defendant Lt. Scott Boyher was the commander of the BRT at the time. (*Id.*, ¶ 12). The BRT headed east through the south parking lot of City Hall, until it arrived at Tucker. (*Id.*, ¶ 14). Plaintiff claims the scene was peaceful prior to the BRT officers' arrival, but testified that it became chaotic when the bike officers arrived at Tucker, and she saw one police officer pick up his bicycle and use it as a weapon to push a civilian. (*Id.*, ¶ 15 and Plaintiff's Response thereto; Defendants' Exh. E, P. 8). Defendants assert the BRT then attempted to strike a wedge formation, which is a formation the BRT is taught to use when they need to clear a path through a group of individuals. (Defendants' Facts, ¶ 16). Defendant Boyher and other officers testified that as the BRT began to move south on Tucker toward the buses, team members had to engage a number of protestors that were locked arm-in-arm and

grabbing BRT officers' bicycles in an attempt to keep the buses from moving away from the area. (*Id*., ¶ 17).[1]

Plaintiff Alison Dreith was leaving the south entrance of City Hall when the BRT moved through the south parking lot. (Defendants' Facts, ¶ 19). The BRT officers came very close to her, nearly hitting her, as they hastily rode toward Tucker. (*Id.*, ¶ 20). Plaintiff continued to walk from City Hall to Tucker, where protestors were gathered. (*Id.*, ¶ 21 and Plaintiff's Response thereto).[2] She does not remember whether she approached officers or not (or whether they approached her), but does admit she was within "a couple of feet" of one officer. (*Id.*, ¶ 22 and Plaintiff's Response thereto). Defendant Boyher testified that Plaintiff was one of the people fighting the BRT officers, by trying to prevent them from getting to the bus, and that he saw Plaintiff put her hand on one of the BRT officer's bicycles. (*Id.*, ¶¶ 23, 24). He claims he then deployed a short burst of pepper spray to Plaintiff. (*Id.*, ¶ 26).[3] Plaintiff testified that she did not hear any police orders or warnings from Defendant Boyher or the officer next to him. (*Id.*, ¶ 29).[4] She further counters that "[t]he events proceeded as follows in rapid succession: Plaintiff was walking to Tucker, Plaintiff observed an officer hitting a woman with his bicycle, Plaintiff saw someone else being pepper sprayed, and Defendant Boyher pepper sprayed plaintiff immediately and without warning thereafter." (Plaintiff's Response to Defendants' Facts. ¶ 23).

---

[1] Plaintiff counters that the protestors did not grab officers' bicycles, and BRT officers gave no warning to the persons locked arm-in-arm to allow them voluntarily to unlink their arms. Instead, she states the BRT forcefully removed the persons in front of the bus without warning. (Plaintiff's Response to Defendants' Facts, ¶ 17).

[2] Plaintiff's intention was to rejoin the protest. (Plaintiff's Statement of Additional Facts in Support of her Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Additional Facts"), ¶ 4).

[3] Defendant Boyer pepper sprayed five or six people during this incident, and made no effort to identify any of those people. (Plaintiff's Additional Facts, ¶¶ 17, 18).

[4] Defendants do not controvert that Plaintiff did not hear any orders or warnings. They do, however, maintain that orders and warnings were given. (*See* Defendants' Response to Plaintiff's Additional Facts, ¶ 10).

She further maintains that although a photograph exists depicting two officers next to Defendant Boyher, including the officer whose bicycle Plaintiff supposedly grabbed, Defendants have never identified the officers or produced any witness to corroborate Defendant Boyher's version of events. (*Id.*).

After she was sprayed, a bystander moved Plaintiff from the street to the sidewalk, and gave her water and Milk of Magnesia in an attempt to address her symptoms. (Defendants' Facts, ¶¶ 27, 28 and Plaintiff's Response thereto).[5] Plaintiff was not arrested during these events. (*Id.*, ¶¶ 30, 31).

Plaintiff filed her original Complaint in this matter on September 17, 2018. (ECF No. 1). In her Second Amended Complaint, filed September 17, 2019, Plaintiff lodges the following causes of action: First and Fourteenth Amendment Violations against Defendant Boyher (Count I); Municipal Liability *Monell*[6] Claim against Defendant City of St. Louis for Failure to Train, Failure to Supervise, and for a Custom of Conducting Unreasonable Search and Seizures and Use of Excessive Force (Count II); Missouri State Law Claim of Negligent Infliction of Emotional Distress against both Defendants (Count III); Fourth and Fourteenth Amendment Claim of Excessive Force against Defendant Boyher (Count IV); and Missouri State Law Claim of Battery against both Defendants (Count V). (ECF No. 45).

As noted above, Defendants filed the instant Motion for Summary Judgment on June 11, 2021, claiming there exist no genuine issues of material fact, and they are entitled to judgment as a matter of law on all counts of Plaintiff's Second Amended Complaint.. (ECF No. 75).

**SUMMARY JUDGMENT STANDARD**

---

[5] Plaintiff alleges she continued to experience symptoms and excruciating pain. (Plaintiff's Response to Defendants' Facts, ¶ 28).
[6] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## DISCUSSION

### I. Qualified Immunity

United States District Judge Rodney W. Sippel of this Court recently provided a detailed analysis of the doctrine of qualified immunity, which the Court quotes at length here:

> Qualified immunity protects a government official from liability "unless the official's conduct violated a clearly established constitutional or

statutory right of which a reasonable person would have known." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

To determine whether an official is entitled to qualified immunity, the Court asks the following two-part question:  (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the offending conduct.  *Brown v City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The Court may decide which determination to make first, *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

"A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (internal quotation marks and citation omitted).  "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir. 2012) (internal quotations marks and citation omitted).  "The unlawfulness must merely be apparent in light of preexisting law, and officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 531 (8th Cir. 2009) (internal quotation marks and citation omitted).

*Smalley v. Gamache*, No. 4:10CV319 RWS, 2013 WL 1149146, at *2 (E.D. Mo. Mar. 19, 2013).

    A.    **<u>First Amendment</u>**

In Count I of her Second Amendment Complaint, Plaintiff claims Defendant Boyher violated her civil rights pursuant to 42 U.S.C. § 1983, when he committed violations of the First Amendment.  (SAC, ¶¶ 62-71).  Plaintiff alleges in part as follows:

> 63.    Plaintiff has a fundamental right to assemble and express Plaintiff's views protected by the freedom of association and freedom of speech clauses of the First

>  Amendment, as applied to the states under the Fourteenth Amendment to the United States Constitution.
>
> 64. Defendant Boyher's actions violated Plaintiff's rights under the First Amendment to freedom of speech and freedom of assembly by interfering with Plaintiff's ability to associate freely in public and express Plaintiff's views as part of a peaceful demonstration….
>
> 69. Additionally, Defendants' actions described herein have had a chilling effect on Plaintiff, who is now less likely to participate in free public discourse.

(*Id.*, ¶¶ 63-64, 69).

In order to prevail on her First Amendment claim, Plaintiff must show:  "(1) [she] engaged in protected activity; (2) [Defendant] caused an injury to [Plaintiff] that would chill a person of ordinary firmness from continuing the activity; (3) and a causal connection between the retaliatory animus and injury." *Quraishi v. St. Charles County, Mo.*, 986 F.3d 831, 837 (8th Cir. 2021) (citation omitted).  In her Second Amended Complaint, Plaintiff claims Defendant Boyher deployed pepper spray in an effort to interfere with Plaintiff's ability to associate freely in public and express her views as part of a peaceful demonstration.

In their Motion for Summary Judgment, Defendants assert that the undisputed facts demonstrate Plaintiff was not engaging in protected activity, and even if she was, Defendant Boyher's actions were not motivated by said conduct.  (Defendant City of St. Louis and Scott Boyher's Memorandum in Support of their Motion for Summary Judgment ("Defendants' Memo in Support"), PP. 10-11).  Rather, Defendants maintain the fact that Plaintiff approached so close to BRT officers provided Defendant Boyher with probable cause to believe that she was violating the law, and further that he only sprayed Plaintiff when she became engaged with another officer.  (*Id.*).  Plaintiff counters that she was engaged in protected activity, as she was moving to rejoin peaceful protestors when Defendant Boyher assaulted her without warning and

without cause. (Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Opp."), PP. 8-9).

Upon consideration, the Court finds genuine issues of material fact exist with respect to whether Plaintiff was engaged in protected activity at the time of the incident, and whether Defendant's Boyher's motive in spraying Plaintiff was retaliation for said behavior. *See Peterson v. Kopp*, 754 F.3d 594, 603 (8th Cir. 2014) (holding that the "causal connection", *i.e.*, retaliatory motive, is generally a jury question unless it is so free from doubt as to justify taking it from the jury); *Quraishi*, 986 F.3d at 838 ("[Defendant's] motive is not so free from doubt as to justify taking it from the jury.").[7] The Court thus concludes that Defendant Boyher is not entitled to summary judgment or qualified immunity on Plaintiff's First Amendment claim.

## B. Fourth Amendment Excessive Force

In Count IV of her Second Amended Complaint, Plaintiff alleges that Defendant Boyher violated the Fourth Amendment, as his use of force against her was objectively unreasonable and excessive. (SAC, ¶¶ 87-92). In order to establish a Fourth Amendment violation, "the claimant must demonstrate a seizure occurred and the seizure was unreasonable." *Quraishi*, 986 F.3d at 839 (internal quotation marks and citation omitted). "A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority." *Id.* (internal quotation marks and citations omitted). Further, to be seized "a reasonable person would have believed that [she] was not free to leave. But where police attempt a show of force

---

[7] Defendant does not argue that the constitutional right at issue was not clearly established at the time of the allegedly offending conduct, and the Court has no problem finding that it was. *See Quraishi*, 986 F.3d at 838; *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions….for speaking out.").

and an individual does not submit, the individual has not been seized." *Id.* at 839-40 (internal quotation marks and citations omitted).

In order to defeat the defense of qualified immunity in a Fourth Amendment excessive force context, Plaintiff must demonstrate that her right to be free from Defendant's particular use of force was clearly established at the time of the incident. *Shelton v. Stevens*, 964 F.3d 747, 753 (8th Cir. 2020). "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks and citation omitted). Thus, "[e]ven where an officer's action is deemed unreasonable under the Fourth Amendment, he is entitled to qualified immunity if a reasonable officer could have believed, mistakenly, that the use of force was permissible…" *Id.* (citation omitted). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case." *Id.* (internal quotation marks and citation omitted). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate." *Id.* (internal quotation marks and citation omitted). "A plaintiff need not show that the very action in question has previously been held unlawful, but [she] must establish that the unlawfulness was apparent in light of preexisting law." *Ellison v. Lesher*, 796 F.3d 910, 914 (8th Cir. 2015) (internal quotation marks and citation omitted).

Upon consideration, the Court finds the Eighth Circuit's opinion in *Quraishi* is controlling and dispositive. In that case, a group of reporters with Al Jazeera America news network was covering protests that followed the death of Michael Brown in Ferguson, Missouri. *Quraishi*, 986 F.3d at 834. While they were preparing for a live broadcast, an officer with the St. Charles County police department allegedly deployed a tear-gas canister against them without probable cause. *Id.* The Eighth Circuit held that while such use would clearly violate the First

Amendment, it was not clearly established that the officer's acts constituted a seizure under the Fourth Amendment. *Quraishi*, 986 F.3d at 40 ("Neither the district court nor the reporters cite authority that gave 'fair warning' to [Defendant] that deploying one canister of tear-gas was a seizure."). As such, the officer in *Quraishi* was entitled to qualified immunity on that claim. *Id.* at 839-40.

In the instant case, as in *Quraishi*, in order to establish a Fourth Amendment violation Plaintiff must show that a seizure occurred, and again, to be seized, a reasonable person must have believed that she was not free to leave. *Id.* at 839. *See also Molina v. City of St. Louis, Mo.*, No. 4:17CV2498 AGF, 2021 WL 1222432, at *10 (E.D. Mo. Mar. 31, 2021). Even viewing the facts in the light most favorable to Plaintiff, she cannot make such a showing. Instead, the uncontroverted facts demonstrate (1) that Plaintiff was not arrested or detained in any capacity on September 15, 2017; (2) that neither Defendant Boyher nor any other officer made any attempt to arrest or detain Plaintiff that day; (3) that after she was sprayed, Plaintiff moved away from the officers and was assisted by non-police officers; and (4) that after receiving assistance, Plaintiff left the protest. Furthermore, as the Court held in *Quraishi*, this Court finds that at the time Defendant Boyher deployed the pepper spray it was not clearly established that his actions constituted a seizure.[8] As such, he is entitled to qualified immunity on Plaintiff's Fourth Amendment claim.[9]

---

[8] The Court finds the fact that Plaintiff here was prevented from moving in one particular direction (toward the protestors), while the plaintiffs in *Quraishi* were prevented from staying in one place, to be a distinction without a difference in terms of whether the defendant officer was on notice that his actions potentially constituted a seizure.

[9] The Court notes that in Count IV of her Second Amended Complaint, Plaintiff fails to allege she was seized in the first instance. Instead, she frames her claim only in terms of excessive force. (*See* SAC, ¶¶ 87-92). In the Fourth Amendment context, however, force is examined as an aspect of the seizure. *See e.g., Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) (internal quotation marks and citations omitted) ("The determination whether the force used to

## II.     Municipal Liability For First Amendment Retaliation[10]

For § 1983 liability to attach to a governmental entity, a plaintiff must show that a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). In order to prove a municipal custom, Plaintiff must demonstrate: "(1) a continuing, widespread, persistent pattern of unconstitutional misconduct; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice of the misconduct; and (3) that the plaintiff was injured as a result of the custom." *Molina*, 2021 WL 1222432, at *11 (citing *Moore v. City of Ferguson, Mo.*, 213 F.Supp.3d 1138, 1146 (E.D. Mo. 2016)).

To state a viable § 1983 claim against Defendant City for failure to train and supervise, Plaintiff must plead facts sufficient to show that (1) the City's officer training and supervision practices were inadequate; (2) the City was deliberately indifferent to the rights of others in adopting these training and supervision practices, and the City's failure to train and supervise was a result of deliberate and conscious choices it made; and (3) the City's alleged training and supervision deficiencies caused Plaintiff's constitutional deprivation. *See Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013). Ultimately, Plaintiff must prove that the City "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018)

---

effect a seizure was reasonable ultimately requires a case-specific balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.").

[10] To the extent Plaintiff asserts a claim for municipal liability under the Fourth Amendment, that claim fails with the grant of summary judgment to Defendant Boyher on Count IV. *See Corwin v. City of Indep., Mo.*, 829 F.3d 695, 700 (8th Cir. 2016) (internal quotation marks and citation omitted) ("[I]n order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.").

(internal quotation marks and citation omitted). Plaintiff may establish City notice of a deficiency in its procedures in one of two ways:

> First, notice may be implied where failure to train officers or employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious….The second avenue for asserting a failure to train claim arises where the need for additional training may not be obvious from the outset, but a pattern of constitutional violations could put the municipality on notice that its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens.

*Thelma D. By and Through Delores A. v. Board Of Educ. Of City of St. Louis*, 934 F.2d 929, 934-35 (8th Cir. 1991) (citations omitted).

In Count II of her Second Amended Complaint, Plaintiff alleges that Defendant City is liable to Plaintiff because the violations were caused by a custom and/or the City's failure to train or supervise. (SAC, ¶¶ 72-79). Plaintiff claims that among the policies, practices, or customs that caused constitutional harm to Plaintiff are the following:

> A. SLPD's routine use of excessive force when policing protests, especially those at which police brutality is being protested;
> B. SLPD's policy or custom of issuing vague and even contradictory dispersal orders without giving an opportunity to comply;
> C. SLPD's policy of arbitrarily declaring unlawful assemblies in the absence of any threat or force or violent activity that provides no notice to citizens or unlawful conduct;
> D. SLPD's custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

(*Id.*, ¶ 73). Plaintiff further maintains Defendant City had notice that its use of force training and officer supervision was inadequate and likely to result in constitutional violations, based on multiple incidents of excessive force against protestors in October 2014, November 2014, July 2015, August 2015, and September 2017. (*Id.*, ¶ 74). She elaborates by noting that several of these incidents occurred after the City entered into a settlement agreement regarding its use of

chemical agents in *Templeton v. Dotson*, No. 4:14CV2019 CEJ (E.D. Mo. Mar. 25, 2015). (*Id.*, ¶¶ 27-33, 75-76).

In support of their Motion for Summary Judgment, Defendants note that the BRT was created as part of the ongoing evolution of the SLPD's response to large scale protest activity, and members of the BRT unit receive additional training beyond that given by the SLPD itself. (Defendants' Memo in Support, PP. 6-7). Defendants further note that SLPD training discusses the use of personal pepper spray, including the times in which it appropriately may be used, and that Section XIII of the Use of Force policy referencing the use of munitions during crowd control situations was added as a result of the *Templeton* settlement. (*Id.*, P. 7). Finally, SLPD officers are required to certify they have reviewed and answered questions related to the Use of Force policy at least once per month. (*Id.*).

Plaintiff counters that "[e]ven after the *Templeton* settlement and the incidents that gave rise to it, Defendant City did not initiate or require comprehensive retraining of its officers, despite repeated, similar constitutional violations perpetrated by SLMPD officers after that settlement and before the incident at issue in this case." (SAC, ¶ 76). She elaborates in her response to Defendants' motion as follows: "Subsequently, SLMPD updated its chemical munitions policy to incorporate the language from the *Templeton* settlement. SLMPD did not, however, adequately train its officers regarding the *Templeton* agreement or the change in policy. Numerous police officers, from majors to patrolmen, testified that they were not aware of the *Templeton* settlement agreement or the change in chemical munitions policy.[11] Many of them also testified that they never received any training whatsoever regarding the change in the

---

[11] Defendant Boyher testified that he was not aware of the settlement agreement in *Templeton*, and in fact had never heard of *Templeton v. Dotson*. (Plaintiff's Additional Facts, ¶¶ 35-36).

chemical munitions use of force policy. In reality, for the officers on the street, nothing changed as a result of *Templeton*." (Plaintiff's Opp., P. 6; *see also* Plaintiff's Additional Facts, ¶¶ 32-47).

Furthermore, while Defendants maintain the SLPD has an internal affairs division that investigates every claim made against its officers, Plaintiff counters that the City never investigated, monitored, or disciplined Defendant Boyher or any other officer in connection with this incident. (*See* Defendants' Memo in Support, P. 8; Plaintiff's Opp., PP. 7-8; Plaintiff's Additional Facts, ¶¶ 48-52). Plaintiff thus provides evidence that even if official policy mandates that all claims against officers be thoroughly documented and reviewed, in reality such review did not always happen.

Upon consideration the Court finds that with her allegations, Plaintiff presents evidence from which a reasonable jury could conclude Defendant City had notice of a pattern of unconstitutional acts committed by officers with respect to the deployment of chemical munitions in violation of citizens' First Amendment rights. Plaintiff further presents evidence that Defendant City adopted deficient supervision and training practices with deliberate indifference to the constitutional rights of others, that these training practices were the product of the City's deliberate and conscious choices, and that the practices proximately caused Plaintiff's injury. Defendants' Motion for Summary Judgment on Plaintiff's *Monell* claim will therefore be denied.

### III. Official Immunity

Defendants next assert Defendant Boyher is entitled to official immunity from Plaintiff's state law claims. "Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of ministerial acts." *Reasonover v. St. Louis County,*

*Mo.*, 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted). A law enforcement officer's decision to use force in the performance of his duties is discretionary rather than ministerial. *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015).

"[O]fficial immunity does not apply to discretionary acts done in bad faith or with malice", however. *Davis*, 794 F.3d at 1013 (internal quotation marks and citations omitted). "A finding of malice requires 'conduct which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or any improper or wrongful motive.'" *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986) (citation omitted)). "A finding of bad faith embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive." *Id.* (internal quotation marks and citations omitted).

In their Motion for Summary Judgment, Defendants argue that Plaintiff cannot show Defendant Boyher's actions were undertaken in bad faith or with malice, as there is no doubt he believed Plaintiff's actions posed a potential threat to his safety or to that of other officers. (Defendants' Memo in Support, PP. 15-16). In support of this assertion, Defendants state that the context of the event is crucial to the Court's analysis, and they maintain the circumstances were as follows: As SLPD officers began loading buses to remove them from the protest location, protestors began to surround the buses in an effort to prevent them from leaving, and several protestors threw objects at the buses, one of which was thrown hard enough to break a window. The BRT was called in to clear a lane for the buses to leave, and attempted to strike a wedge formation to achieve the clearing. As it attempted to do so, BRT team members had to engage a number of protestors that were locked arm-in-arm and grabbing BRT officers' bicycles

in an attempt to keep the buses from moving away from the area.  In the midst of this chaotic activity, Plaintiff approached within a few feet of BRT officers, and put her hand on one of the BRT officer's bicycles.  Defendant Boyher claims he then deployed a short burst of pepper spray to Plaintiff.

Plaintiff's version of events differs from Defendants' in several important respects.  First, while she acknowledges that it seems a few protestors threw what appeared to be empty water bottles, Plaintiff claims the bottles bounced harmlessly off the buses.  Plaintiff further claims the scene only became chaotic when the bicycle officers arrived, and that she saw a police officer pick up his bicycle and use it as a weapon to push a civilian.  Plaintiff finally asserts that after she observed an officer hitting a woman with his bicycle, Plaintiff saw someone else being pepper sprayed, and Defendant Boyher then pepper sprayed Plaintiff in the face immediately thereafter and without warning as she attempted to walk to where other protestors were gathered.  Plaintiff denies that she grabbed an officer's bicycle or committed any other unlawful acts.

Upon consideration, the Court finds Plaintiff's allegations state facts from which it could be found that Defendant Boyher acted in bad faith or with malice when he applied pepper spray directly into Plaintiff's face without warning, when she was merely walking to join protestors and not engaged in any unlawful acts.  The Court therefore will deny Defendants' Motion for Summary Judgment based on official immunity.

**IV.**  **Sovereign Immunity**

Defendants finally assert that sovereign immunity bars the state law claims against Defendant City.  (Defendants' Memo in Support, PP. 17-18).  Having reviewed the parties' submissions, the Court believes it would be well-served by entertaining oral argument on this issue.  As the City remains a Defendant in this matter regardless, however, the issue will only

become relevant should the jury find liability on the state law claims against the individual Defendant. The Court therefore will reserve ruling on this issue until after the trial concludes, and will schedule oral argument as necessary at that time.[12]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED that** Defendants' Motion for Summary Judgment (ECF No. 75) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

Dated this 13th Day of September, 2021.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[12] The Court notes that in their Joint Motion for Extension of Trial Setting, Defendants asserted that should their Motion for Summary Judgment be denied, they anticipated filing an interlocutory appeal on the issue of qualified immunity. (*See* ECF No. 91, PP. 1-2).